**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TONIA DANIELS

Plaintiff,

v.

THE ARLINGTON CENTRAL SCHOOL DISTRICT OF NEW YORK,

Defendant.

**Civil Action No. 25-cv-2196**

**COMPLAINT**

**Jury Trial Demanded**

## PRELIMINARY STATEMENT

1. Ms. Daniels is a successful and experienced K-12 teacher and principal.

2. Ms. Daniels began as a substitute teacher in the Arlington School District in February 2024.

3. From the beginning, Ms. Daniels was routinely misgendered by administration and staff, despite her gentle corrections.

4. After being put on notice that misgendering of Ms. Daniels was rampant in the schools, the District took no remedial action.

5. The District's failure to take prompt and effective action allowed, perpetuated and condoned a hostile work environment motivated by Ms. Daniels' gender identity.

6. Despite further complaints, the misgendering continued unabated.

7. The misgendering led to questions from the students about Ms. Daniels' gender identity.

8. Students communicated these questions to their parents.

9. Some of these parents formed a group to oppose Ms. Daniels' teaching in the Arlington School District.

10. These parents caused disparaging articles about Ms. Daniels' gender identity to be placed in local media and on social media, ridiculing Ms. Daniels' gender identity, and stating that she is not fit to practice her profession.

11. Parents complained to the School District because they did not wish Ms. Daniels to teach their children because of her gender identity.

12. In March 2024, the Defendant School District placed a restriction on Ms. Daniels' ability to be a substitute teacher in its School District.

13. She was directly told by the administrator in charge of substitute teachers that this was because of the parents' complaints about her gender identity.

14. He stated that he did not agree with this action, but was forced to make this decision at the insistence of the parents.

15. The meant she was no longer allowed to apply for or be considered for substitute teaching in the District.

16. In April 2024, the District restricted her from all substitute teaching in the District for the same reason.

17. This was in violation of the Federal Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, the Equal Protection Clause of the United States and New York Constitutions, the Due Process Clauses of the United States and New York Constitutions, and the Free Speech Clauses of the United States and New York Constitutions.

## PARTIES

18. Plaintiff Tonia Daniels worked as an employee for Defendant Arlington Central School District from February 15, 2024 through April 24, 2024 in various schools located in Dutchess County, New York.

19. Defendant School District, an independent corporation pursuant to the New York Education Law, has its principal office address at 144 Todd Hill Road, LaGrangeville, Dutchess County, New York, which continuously employed at least fifteen employees.

## PROCEDURAL HISTORY

20. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging sex discrimination by Defendant in violation of Title VII.

21. On June 25, 2024, Plaintiff served a Notice of Claim on the Defendant, alleging, *inter alia*, violations of the Equal Protection Clauses, Due Process Clauses, and Free Speech Clauses of the United States and New York Constitutions.

22. On December 17, 2024, the United States Department of Justice issued a Notice of Right to Sue.

23. Plaintiffs took all necessary steps to exhaust her administrative remedies.

24. Plaintiffs took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act and the United States Constitution, and

pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

26. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal claims.

27. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed within the United States District Court for the Southern District of New York.

## STATEMENT OF FACTS

28. Respondent was aware at the time of her hire that Ms. Daniels is transgender because she spoke about it with an administrator, Eric Schetter, HR Supervisor of the School District.

29. She was also told that the District needed substitute teachers, and that she was likely to receive work frequently for substitute teaching.

30. Generally, substitute teachers who are on the roster are kept busy by the District to substitute its approximately 700 teachers.

31. She reasonably expected to enter into a long-term relationship with the School District as a substitute teacher.

32. Shortly after she began teaching, she began to be misgendered on a regular basis by administrators, teachers, staff and students.

33. This led to students having questions about Ms. Daniels' gender.

34. Sometimes the students asked questions and made statements remarking on her gender identity that showed bias or prejudicial misunderstanding regarding transgender people and Ms. Daniels' gender identity.

**A. <u>School District Policy Regarding Bias.</u>**

35. She was required by the Defendant's policies to speak up against every biased remark, every time it happens.

36. Defendant's policy suggested that such remarks be responded to by explaining that it is offensive, or makes one feel unsafe and unaccepted, and that it is unacceptable.

37. Defendant's policy also suggested asking "What do you mean by that?" "Did you mean to say something hurtful?" and other similar questions designed to elicit reflection by the person making the remark.

38. Defendant's policy also acknowledged that "Sometimes in the moment, we don’t handle situations of bias perfectly."

39. The policy suggested bringing up the incident again in a later class, because "if biased incidents go unaddressed it can send an unintended, yet powerful, message to all who witnessed it that that kind of behavior is acceptable to you."

40. The policy required district and/or school professionals to take immediate steps to secure the physical and emotional safety of those involved.

41. It also required that they:

a. Assess the situation for the physical and emotional safety of the persons involved and the broader school community

b. Decide what type of response (in-person, by phone, or by email) aligns best with district policy and maintains your safety and the well-being of others involved.

c. Ensure your response acknowledges the impact of bias on the person(s) at whom the biased incident was directed. In many cases this will include African American/Black people, people of color, members of Tribal communities, LGBTQI2SA+ people, the Jewish community, and others from historically oppressed backgrounds.

d. Focus on incident impact, not the intent of the person(s) who caused harm.

e. Be aware of the impact of unconscious bias on decision making.

f. Select an immediate response that maintains your personal safety, aligns with district policy, reduces harm to those involved, and ensures a safe environment for all.

g. Listen empathetically to gather information and problem-solve.

h. Interrupt it every time, in the moment. Try not to let the moment pass. The more often the behavior is interrupted the more likely it will stop.

i. Question in a gentle "tell me more" way, which allows the speaker to think about his/her language and bias.

j. Educate about why the word or phrase is offensive. Give the speaker the benefit of the doubt, and allow them to make a change. Sometimes kids know a word is negative so they use it as a put-down without understanding the true meaning. Use the opportunity as a teachable moment. 1:1 discussions and whole group lessons can be useful means to educate. Role play with students about how words can hurt and the importance of being an ally.

42. Ms. Daniels did so, responding to these queries or statements in a brief fashion with age-appropriate language, and notified school administrators where appropriate.

### B. Events Leading To Defendant's First Restriction on Plaintiff's Substitute Teaching.

43. On February 16, her first day, she was misgendered by a member of the HR staff at orientation. She complained to that person and to Mr. Schetter.

44. Upon information and belief, no action was taken as a result of the complaint.

45. She also reported all of the following incidents to Mr. Schetter.

a. On February 23, students asked if she was a boy or girl. She responded with age-appropriate information.

b. On March 4, she was walking down the hallway, with her ID lanyard, when she said hello to a passing custodian and another person at Titusville Intermediate School. The custodian scrutinized her clothing and brusquely said to her "I don't know you. What are you doing in my building?" It was apparent that the custodian was questioning her gender identity. She complained to the principal, and he indicated that he took the issue seriously and would address it, and he later advised her that he did so.

c. On March 15, students in a class at Arthur May Intermediate School laughed at her because of her gender identity and gender expression. When she reported this to the principal, and suggested that the students should be given age-appropriate information by the administration, her concerns were minimized, excused and dismissed. No action was taken by that principal or others to address this issue.

46. As a result of these incidents, and the likelihood of further discussions among students and staff, some of these students communicated to other students and to their parents that they had laughed at and disparaged Ms. Daniels because of her gender identity.

47. This perpetuated hostility among students and parents towards Ms. Daniels' gender identity.

48. This perpetuation led to further incidents.

49. On March 19, 2024, she taught a class Titusville Intermediate School.

50. She was told by the regular teacher that the class was a "very challenging environment."

51. She understood this to mean that the students were unruly.

52. When she arrived at the class, the students were unruly and there was bullying by some students of other students, calling them various epithets disparaging to students of that age.

53. A competent teacher is required to keep control of her classroom.

54. To address this negatively charged atmosphere that would interfere with the students' learning, she told the class about an incident she experienced in fifth grade that hurt her feelings.

55. She did so in order to create empathy for other students who might be less accepted by the peer group.

56. She said she had been talking to a classmate whom she believed to be a very good friend.

57. She told the classmate in confidence that she wished she had a girlfriend, and that she felt as if she were a girl.

58. The classmate divulged this information to the class, causing great distress to Ms. Daniels, leading to a loss of friends and to bullying.

59. She explained to the class that, just as in her story, telling stories about classmates to embarrass them is very hurtful, and may result in loss of friends and bullying.

60. She suggested they would not like it if this were done to them.

61. She suggested that, therefore, they should not do it to others.

62. This was for the purpose of providing the students with a concrete framework to understand bullying, as the concept of bullying can seem quite abstract to a young person.

63. Her attempt was successful, and there were no more incidents of bullying in that class, despite the generally unruly atmosphere of the students in that class.

64. The next day, HR Supervisor Eric Schetter spoke to Ms. Daniels.

65. He told her she was restricted from teaching at Titusville Intermediate School.

66. He stated explicitly that this was because of parents who communicated to the principal at Titusville that they did not wish to have their children hear a story about a transgender person.

67. He stated that the parents asked to have her removed from her position as a substitute at the school.

68. He stated the parents were calling the principal incessantly and posting on social media about Ms. Daniels.

69. He stated his main concern was to quiet the parents at Titusville by restricting her from teaching at the school.

70. This job action reduced her ability to teach as a substitute in the District, and tangibly changed her compensation, terms, conditions, or privileges of employment.

71. This job action subjected her to inferior terms, conditions or privileges of employment.

72. This job action treated her differently and less well than all other similarly situated non-transgender substitute teachers.

### C. <u>Events Leading to Defendant's Further Restriction of Plaintiff's Teaching.</u>

73. In early April, a second grade student at Overlook Primary School who passed her in the hall asked if she was a boy or a girl.

74. When she did not answer right away, he repeatedly asked the question. She confirmed that she is a girl, but noting the student's puzzlement, also stated "although I used to be a boy."

75. The student appeared satisfied, and he appeared to enjoy the class that day with Ms. Daniels.

76. On April 11, a teacher at the Traver Road Primary School misgendered Ms. Daniels in the presence of another teacher.

77. Upon Ms. Daniels' gentle correction, the teacher defended themselves by stating that students misgendered her, implying that Ms. Daniels must accustom herself to being misgendered and not complain about it.

78. On April 12, Ms. Daniels was misgendered by a teacher at the Vail Farm Elementary school.

79. In her class that day, some 5th grade students seemed puzzled about her gender expression.

80. Sensing this, Ms. Daniels told the class in passing that she uses she/her pronouns. In response, one student, who had previously been acting out in the class, said loudly "yes, sir," with an emphasis on the "sir."

81. This was intended to be disrespectful to Ms. Daniels by calling out her gender identity.

82. She sought to clarify the issue by asking if he meant to use the male honorific "sir."

83. The student stated in the affirmative.

84. In response, Ms. Daniels said that she had thought so, but did not make any further comment.

85. She learned later that the student complained to his parent that Ms. Daniels was "mean" because of her asking this question.

86. Ms. Daniels told the school principal of this incident.

87. The school took no action in response to this incident.

88. On April 24, Mr. Schetter, the HR Supervisor, called Ms. Daniels on the telephone.

89. He stated that she could no longer teach at any school in the District.

90. He stated explicitly that it was because of disclosing her gender identity to the student at Overlook Primary School in early April, who had repeatedly asked her if she were a boy or a girl, as referenced above.

91. He also stated this was his decision because of parents who had repeatedly called to ask that she no longer be allowed to teach in the Arlington School District.

92. This job action removed her ability to teach as a substitute in the District, and tangibly changed her compensation, terms, conditions, or privileges of employment.

93. This job action subjected her to inferior terms, conditions or privileges of employment.

94. This job action treated her differently and less well than all other similarly situated non-transgender substitute teachers.

## COUNT I

**Termination of Employment**
**and Other Adverse Actions Motivated by**
**and Because of Sex, Gender Expression and**
**Gender Identity pursuant to 42 U.S.C. § 2000e-1 et seq ("Title VII").**

95. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

96. Ms. Daniels, as a transgender person, is in the protected category of sex.

97. The Defendant School District explicitly told Ms. Daniels, through its administrator, Mr. Schetter, at the time of restricting her teaching at the Titusville School that his decision was because of parents' complaints about her transgender identity being known to students.

98. Ms. Daniels met the legitimate expectations of her employer, as there were no substantive criticisms of her teaching.

99. Defendant first restricted Plaintiff's employment at the Titusville School, and then restricted her from teaching anywhere in the District.

100. Defendant restricted Plaintiff's teaching and its administrator bluntly stated on both occasions that it was because of parental complaints related to her gender identity.

101. These statements are direct evidence that the decisions to restrict her teaching were motivated by and caused by her sex, gender expression and gender identity.

102. Defendant's termination of Plaintiff was the proximate cause of Plaintiff's injuries.

103. Plaintiff suffered damages as a result of Defendant's actions.

104. As a direct and proximate result of the termination, Plaintiff suffered damages, including lost wages, humiliation, loss of enjoyment of life and other pecuniary and non-pecuniary damages.

## COUNT II
## Violation of the New York State Human Rights Law pursuant to New York Executive Law § 296, et seq.

105. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

106. Ms. Daniels is a transgender woman, placing her in the protected categories of sex, gender identity, and gender expression under the New York State Human Rights Law.

107. The Defendant discriminated against Ms. Daniels by restricting and ultimately terminating her substitute teaching assignments because of her gender identity and gender expression.

108. Defendant's actions subjected Ms. Daniels to inferior terms, conditions, and privileges of employment compared to similarly situated non-transgender substitute teachers.

109. Defendant's discriminatory conduct was a direct and proximate cause of Ms. Daniels' injuries.

110. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including lost wages, humiliation, emotional distress, loss of enjoyment of life, and other pecuniary and non-pecuniary damages.

**COUNT III**
**Violation of the Equal Protection**
**Clause of the Fourteenth Amendment**
**to the United States Constitution pursuant to 42 U.S.C. § 1983**

111. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

112. Defendant, acting under color of state law, deprived Ms. Daniels of her right to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution.

113. The actions of the Defendant, in discriminating against Ms. Daniels on the basis of her gender identity and gender expression, were intentional and motivated by animus against her sex.

114. The disparate treatment compared to similarly situated non-transgender substitute teachers constitutes a violation of Ms. Daniels' constitutional rights.

115. As a direct and proximate result of Defendant's actions, Ms. Daniels suffered damages, including lost wages, reputational harm, emotional distress, and other pecuniary and non-pecuniary damages.

116. Plaintiff seeks a declaration that the District policy, custom or practice of restricting, disciplining, or terminating teachers based on their gender identity is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

117. Plaintiff further seeks a permanent injunction prohibiting the defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or maintaining any policy, custom, or practice that restricts, disciplines, or terminates teachers based on their gender identity, and requiring the district to take appropriate remedial measures to prevent further violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

118. Plaintiff further seeks reinstatement to her prior teaching position and restoration of all rights, privileges, and benefits, lost as a result of the districts unconstitutional conduct.

## COUNT IV
## Violation of the Equal Protection Clause of the New York State Constitution, Art. I § 11

119. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

120. Defendant, a public employer, violated Article I, Section 11 of the New York State Constitution by discriminating against Ms. Daniels based on her gender identity and gender expression.

121. The Defendant, acting under color of state law, treated Ms. Daniels differently and less favorably than similarly situated non-transgender substitute teachers without a substantial or rational basis.

122. The Defendant, acting under color of state law, treated Ms. Daniels differently and less favorably than similarly situated non-transgender substitute teachers without a substantial or rational basis.

123. This discriminatory treatment deprived Ms. Daniels of her right to equal protection under the New York State Constitution.

124. As a direct and proximate result of Defendant's actions, Ms. Daniels suffered damages, including lost wages, reputational harm, emotional distress, and other pecuniary and non-pecuniary damages.

125. Plaintiff seeks a declaration that the District policy, custom or practice of restricting, disciplining, or terminating teachers based on their gender identity is a violation of the Equal Protection Clause of the New York Constitution.

126. Plaintiff further seeks a permanent injunction prohibiting the defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or maintaining any policy, custom, or practice that restricts, disciplines, or terminates teachers based on their gender identity, and requiring the district to take appropriate remedial measures to prevent further violations of the Equal Protection Clause of the New York Constitution.

127. Plaintiff further seeks reinstatement to her prior teaching position and restoration of all rights, privileges, and benefits, lost as a result of the District's unconstitutional conduct.

## COUNT V
## Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983

128. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

129. Defendant, acting under color of state law, deprived Ms. Daniels of a protected liberty and property interest in pursuing her profession and being free from arbitrary and discriminatory treatment in public employment.

130. The restriction of her ability to substitute teach in the District based on her gender identity, without a fair process or legitimate justification, violated her substantive and procedural due process rights under the Fourteenth Amendment.

131. As a direct and proximate result of Defendant's actions, Ms. Daniels suffered damages, including lost wages, reputational harm, emotional distress, and other pecuniary and non-pecuniary damages.

132. Plaintiff seeks a declaration that the District policy, custom or practice of restricting, disciplining, or terminating teachers based on their gender identity is a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

133. Plaintiff further seeks a permanent injunction prohibiting the defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or maintaining any policy, custom, or practice that restricts, disciplines, or terminates teachers based on their gender identity, and requiring the district to take appropriate remedial measures to prevent further violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

134. Plaintiff further seeks reinstatement to her prior teaching position and restoration of all rights, privileges, and benefits, lost as a result of the districts unconstitutional conduct.

**COUNT VI**
**Violation of the Due Process Clause**
**of the New York State Constitution, Art I § 6.**

135. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

136. Defendant violated Article I, Section 6 of the New York State Constitution by depriving Ms. Daniels of her liberty and property interests in her ability to work as a substitute teacher without due process of law.

137. The Defendant restricted and ultimately terminated Ms. Daniels' ability to substitute teach in the District without providing fair procedures or a rational basis, and did so in a discriminatory manner.

138. These actions constitute a violation of Ms. Daniels' substantive and procedural due process rights under the New York State Constitution.

139. As a direct and proximate result of Defendant's actions, Ms. Daniels suffered damages, including lost wages, reputational harm, emotional distress, and other pecuniary and non-pecuniary damages.

140. Plaintiff seeks a declaration that the District policy, custom or practice of restricting, disciplining, or terminating teachers based on their gender identity is a violation of the Equal Protection Clause of the New York Constitution.

141. Plaintiff further seeks a permanent injunction prohibiting the defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or maintaining any policy, custom, or practice that restricts, disciplines, or terminates teachers based on their gender identity, and requiring the district to take appropriate remedial measures to prevent further violations of the Equal Protection Clause of the New York Constitution.

142. Plaintiff further seeks reinstatement to her prior teaching position and restoration of all rights, privileges, and benefits, lost as a result of the districts unconstitutional conduct.

**COUNT VII**
**Violation of the First Amendment to the**
**United States Constitution pursuant to 42 U.S.C. § 1983**

143. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

144. Ms. Daniels engaged in protected speech by expressing her gender identity and providing age-appropriate responses regarding her gender expression in her classroom.

145. Defendant, acting under color of state law, retaliated against Ms. Daniels for exercising her First Amendment rights by restricting and terminating her substitute teaching opportunities because of the parents' disapproval of her gender expression.

146. Defendant's adverse actions were motivated by and directly caused by Ms. Daniels' protected speech.

147. As a direct and proximate result of Defendant's actions, Ms. Daniels suffered damages, including lost wages, reputational harm, emotional distress, and other pecuniary and non-pecuniary damages.

148. Plaintiff seeks a declaration that the District policy, custom or practice of restricting, disciplining, or terminating teachers based on their gender identity is a violation of the Free Speech Clause of the First Amendment to the United States Constitution.

149. Plaintiff further seeks a permanent injunction prohibiting the defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or maintaining any policy, custom, or practice that restricts, disciplines, or terminates teachers based on their gender identity, and requiring the district to take appropriate remedial measures

to prevent further violations of the Free Speech Clause of the First Amendment to the United States Constitution.

150. Plaintiff further seeks reinstatement to her prior teaching position and restoration of all rights, privileges, and benefits, lost as a result of the districts unconstitutional conduct.

## COUNT VIII
## Violation of the Free Speech Clause of the New York Constitution

151. Plaintiff re-alleges the paragraphs above prior to the Counts as if fully set forth herein.

152. Ms. Daniels engaged in protected speech by expressing her gender identity and providing age-appropriate responses regarding her gender expression in her classroom.

153. Defendant, acting under color of state law, retaliated against Ms. Daniels for exercising her First Amendment rights by restricting and terminating her substitute teaching opportunities because of the parents' disapproval of her gender expression.

154. Defendant's adverse actions were motivated by and directly caused by Ms. Daniels' protected speech.

155. As a direct and proximate result of Defendant's actions, Ms. Daniels suffered damages, including lost wages, reputational harm, emotional distress, and other pecuniary and non-pecuniary damages.

156. Plaintiff seeks a declaration that the District policy, custom or practice of restricting, disciplining, or terminating teachers based on their gender identity is a violation of the Free Speech Clause of the First Amendment to the United States Constitution.

157. Plaintiff further seeks a permanent injunction prohibiting the defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or

maintaining any policy, custom, or practice that restricts, disciplines, or terminates teachers based on their gender identity, and requiring the district to take appropriate remedial measures to prevent further violations of the Free Speech Clause of the First Amendment to the United States Constitution.

158. Plaintiff further seeks reinstatement to her prior teaching position and restoration of all rights, privileges, and benefits, lost as a result of the districts unconstitutional conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that the Defendant District's custom or practice of restricting, disciplining or terminating teachers, based on their gender identity and gender expression, violates:
    a. the Equal Protection Clause of the 14th Amendment to the United States Constitution;
    b. the Equal Protection Clause of the New York Constitution;
    c. the Due Process Clause of the 14th Amendment to the United States Constitution;
    d. the Due Process Clause of the New York Constitution;
    e. the Free Speech Clause of the 14th Amendment to the United States Constitution;
    f. the Free Speech Clause of the New York Constitution;
2. Permanently enjoining the Defendant District, its officers, agents, employees, and all persons acting in concert with them, from enforcing or maintaining any custom, or practice that restricts, disciplines, or terminates teachers, based on their gender identity or gender expression, and require the district to take appropriate remedial measures to prevent further violations

3. Order Plaintiff's reinstatement to her prior teaching position, together with restoration of all rights, privileges, and benefits, lost as a result of the defendant districts unconstitutional conduct
4. Award Plaintiff compensatory damages for the harm caused by the Defendant District's unlawful conduct
5. Award Plaintiff reasonable attorney fees and costs pursuant to Title VII, NYSHRL, and 42 USC 1988; and
6. Grant such other and further relief as the court deems just and proper.

Plaintiff demands a jury trial.

/s/ Jillian T. Weiss
JILLIAN T. WEISS (JW4542)
Law Office of Jillian T. Weiss, PC
242 Main Street, No. 304
Beacon, New York 12508
Telephone: (845) 709-3237
jweiss@jtweisslaw.com

Attorney for Plaintiff